**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LEVI STRAUSS & CO.,

                Plaintiff,

v.

GUANGZHOU MYWEBSHOP
TRADING CO., LTD., et al.,

                Defendants.

Case No. 18-cv-8308

Judge Robert W. Gettleman

Magistrate Judge Young B. Kim

**MOTION TO ENFORCE A BINDING SETTLEMENT AGREEMENT AND RECOVER IMPROPERLY TRANSFERRED FUNDS OR, IN THE ALTERNATIVE, TO SET ASIDE THE DEFAULT JUDGMENT AGAINST DEFENDANT NO. 32**

## <u>TABLE OF CONTENTS</u>

I.     A SETTLEMENT AGREMEENT BETWEEN PLAINTIFF AND THE FOUR STORES RELEASED AND DISCHARGED THE FOUR STORES FROM THE LIABILITY AND DAMAGE AWARED CONNECTED TO THE DEFAULT JUDGMENT.................................................................................................................7

II.     THE DEFAULT JUDGMENT SHOULD BE VACATED BECAUSE PLAINTIFF'S SERVICE ON THE DEFENDANTS WAS IMPROPER.......................................................10

III.    THE DEFAULT JUDGMENT SHOULD BE VACATED BECAUSE THE FOUR STORES CAN DEMONSTRATE GOOD CAUSE, THAT THEY ACTED WITHIN A REASONABLE TIME, AND THAT THEY HAVE A MERITORIOUS DEFENSE...............................................................................................................11
      A.   The Four Defendant Stores Did Not Willfully Fail to Litigate the Case, But Failed to do So Out of Mistake and Inadvertence..................................................................14
      B.   The Four Stores Are Seeking to Correct the Default Judgment Within a Reasonable Time Given the Unique Circumstances of the Case.................................................15
      C.   The Four Defendant Stores have a Meritorious Defense....................................18

IV.    THE COURT SHOULD ALSO VACATE THE DEFAULT JUDGMENT PURSUANT TO RULE 60(B)(3) BECAUSE PLAINTIFF PROVIDED MATERIAL MISREPRENTATIONS TO THE COURT THAT THE COURT RELIED UPON IN GRANTING'S PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT..............................................................................20

V.     IN THE ALTERNATIVE, THE COURT SHOULD VACATE THE DAMAGE AWARD AGAINT THE FOUR STORES............................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Advanced Access Content Sys. Licensing Admin., LLC v. Shen*,
  2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018).........................................................................10

*A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.*,
  461 F .2d 40 (7th Cir.1984)................................................................................................13, 15

*Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*,
  856 F.2d 873 (7th Cir. 1988)........................................................................................13, 17, 18

*Armstrong v. The Cadle Co.*,
  239 F.R.D. 688 (S.D. Fla. 2007)...........................................................................................18

*Beverly v. Abbott Labs.*,
  817 F.3d 328 (7th Cir. 2016)..............................................................................................7, 8

*Bieganek v. Taylor*,
  801 F.2d 879 (7th Cir. 1986)................................................................................................16

*Bluegrass Marine Inc. v. Galena Rd. Gravel, Inc.*,
  211 F.R.D. 356 (S.D. Ill. 2002).......................................................................................16, 17

*Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co.*,
  No. 10-CV-611-JPG-PMF, 2011 WL 1549226 (S.D. Ill. Apr. 21, 2011)....................14, 15, 17

*C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*,
  726 F.2d 1202 (7th Cir.1984)................................................................................................12

*Coyote Logistics, LLC v. AMC Cargo Inc.*,
  No. 16 C 6371, 2017 WL 1862642 (N.D. Ill. May 9, 2017)..............................................*passim*

*Cracco v. Vitran Exp., Inc.*,
  559 F.3d 625 (7th Cir. 2009).........................................................................................13, 14

*Davis v. Hutchins*,
  321 F.3d 641 (7th Cir.2003)............................................................................................13, 15

*e360 Insight v. The Spamhaus Project*,
  500 F.3d 594 (7th Cir. 2007)................................................................................................22

*Ellingsworth v. Chrysler*,
  665 F.2d 180 (7th Cir.1981)................................................................................................12

*Essex Ins. Co. v. RHO Chem. Co., Inc.*,
 145 F. Supp. 3d 780 (N.D. Ill. 2015)........................................................................8

*Fid. & Deposit Co. of Maryland v. Jack Isom Constr. Co.*,
 No. 4:17-CV-21, 2018 WL 1859120 (N.D. Ind. Apr. 17, 2018)................................12

*Flava Works, Inc. v. Does 1–26*,
 No. 12 C 5844, 2013 WL 1751468 (N.D. Ill. Apr. 19, 2013)....................................11

*Hakim v. Payco-Gen. Am. Credits, Inc.*,
 272 F.3d 932 (7th Cir. 2001)....................................................................................8

*In re Outboard Marine Corp.*,
 369 B.R. 353 (Bankr. N.D. Ill. 2007)......................................................................11

*Jones v. Phipps*,
 39 F.3d 158 (7th Cir.1994).................................................................................12, 21

*J & J Sports Prods., Inc. v. Kotsopoulos*,
 No. 1:13-CV-346-SLC, 2015 WL 5730343 (N.D. Ind. Sept. 30, 2015)...................22

*Kagan v. Caterpillar Tractor Co.*,
 795 F.2d 601 (7th Cir.1986)....................................................................................15

*Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
 No. 18 CV 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019)...........................10, 11

*Moje v. Fed. Hockey League, LLC*,
 377 F. Supp. 3d 907 (N.D. Ill. 2019).......................................................................12

*Moore v. Positive Safety Mfg. Co.*,
 107 F.R.D. 49 (E.D. Pa. 1985).................................................................................16

*Naqvi v. Illinois Health & Sci.*,
 No. 17-CV-3145, 2019 WL 3573662 (C.D. Ill. Aug. 6, 2019)..................................12

*Passarella v. Hilton Int'l Co.*,
 810 F.2d 674 (7th Cir. 1987)............................................................................*passim*

*Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*,
 28 F.3d 42 (7th Cir. 1994)........................................................................................11

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*,
 69 F.3d 1377 (7th Cir. 1995)....................................................................................12

iii

*Smith v. Widman Trucking & Excavating, Inc.*,
  627 F.2d 792 (7th Cir. 1980)........................................................................18, 20

*Standard Ins. Co. v. Cole*,
  No. 1:04-CV-1207-JDT-TAB, 2005 WL 4882772 (S.D. Ind. Aug. 19, 2005)..............13,15, 17

*Sun v. Bd. of Trustees of Univ. of IL*,
  473 F.3d 799 (7th Cir. 2007)........................................................................12, 13

*TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*,
  491 F.3d 625 (7th Cir.2007)..............................................................................8

*Tate v. Riverboat Servs., Inc.*,
  305 F. Supp. 2d 916(N.D. Ind. 2004).................................................................17

*Trade Well Int'l v. United Cent. Bank*,
  825 F.3d 854 (7th Cir. 2016)....................................................................13, 15, 18

*United States v. Five Thousand Dollars in U.S. Currency*,
  184 F.3d 958 (8th Cir. 1999)..........................................................................16

*United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*,
  705 F.2d 909 (7th Cir. 1983)......................................................................15, 18

*United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*,
  55 F.3d 1311 (7th Cir. 1995)......................................................................16, 17

*Wehrs v. Wells*,
  688 F.3d 886 (7th Cir. 2012)..................................................................14, 16, 20

*Whitman v. U.S. Lines, Inc.*,
  88 F.R.D. 528 (E.D.Tx.1980)..........................................................................17

*Window World, Inc. v. Hampton*,
  No. 12 C 4329, 2014 WL 1308349 (N.D. Ill. Apr. 1, 2014)......................................16

## Rules

Fed. R. Civ. P. 55.........................................................................................11

Fed. R. Civ. P.  60.........................................................................................11

Fed. R. Civ. P.  60(b)..............................................................................11, 14, 19

Fed. R. Civ. P.  60(b)(1)....................................................................................7

Fed. R. Civ. P.  60(b)(3)............................................................................7, 20, 21

Fed. R. Civ. P.60(c)(1)........................................................................................................15

Fed. R. Civ. P. 4(f)(3)........................................................................................................10

Defendant store "BESTNBEST" (Def. No. 32) ("the Store'), by and through its undersigned counsel, respectfully submits this Motion To Enforce A Binding Settlement Agreement And Recover Improperly Transferred Funds Or, In The Alternative, To Set Aside The Default Judgment Against Defendant No. 32. In support thereof, the Store provides as follows:

## BACKGROUND FACTS

The Store is an online e-commerce store located on the "Wish" e-commerce platform. The Store is owned by a company, which is part of a joint partnership of six other companies and individuals located in Shenzhen, China.[1] The Store sells hundreds of legitimate products, including lamps, hair tools, jewelry, stockings, and magnets that are unrelated to this lawsuit. Declaration of Avida Zhang, ¶¶ 4-5 ("Zhang Decl. ¶¶ 4-5"). The Store purchases its products primarily from well-established and trusted suppliers located in Mainland China. Zhang Decl. ¶ 6. Pertinent to this case, the Store listed just *one item* on its store that is subject to this lawsuit: A pair of women's jean shorts. Notably, the Store did not offer for sale any jeans bearing the word "LEVI'S," nor did its use the term "LEVI'S" in any of its product listings or advertisements. Instead, the Store listed for sale one pair of jeans that used a stitch pattern and tag on one of the back pockets that allegedly was similar to Plaintiff's trademarked stich pattern and tab:



The Store did not know that the back-pocket "stich pattern" and tab was a protected trademark. Zhang Decl. ¶ 9. The pattern, needless to say, is easily overlooked and appears more like an ornamental part of an ordinary jean pocket rather than a trademark or source-identifier.

---

[1] The joint partnership or venture is made up of the following entities: Shenzhen Yiyuantong Technology Co., Ltd., Source Come Limited, BestNBest Limited, WuMinbo, and Heweiqiang.

The Store purchased the non-branded jeans for their hip-hugging look and modern style, not for how the back pocket appeared. Zhang Decl. ¶ 10. Moreover, the Store bought the jean shorts from Shenzhen Xinqiu Trading Co., Ltd. ("Shenzhen"), a well-established and trusted supplier located in the Guangdong Province of China. Zhang Decl. ¶¶ 7-8. The Store did not know the jeans contained a trademark and did not believe that the jeans infringed on any third parties' rights when it purchased the items from Shenzhen. Zhang Decl. ¶¶ 8-9. Indeed, the Store listed the jean shorts for sale on the Wish platform with the following description:

> "**New Arrival 3D Jeans Ice silk Panties Dick denim digital Underwear Women seamless viscose briefs Hip Enhancer Lingerie Panties.**"

As confirmed by the above item description, the Store was not holding out the jeans as Plaintiff's brand; it was just trying to sell "hip enhancer" denim shorts. Furthermore, the Store takes intellectual property rights seriously, as it routinely reviews it inventory to ensure it is not selling infringing products and only purchase products from trusted suppliers. Zhang Decl. ¶ 11.

Finally, the Store sold just <u>two</u> pairs of the jean shorts. And those two pairs of shorts were purchased, upon information and belief, by <u>agents of Plaintiff's law firm</u> in anticipation of this lawsuit.[2] These two sales produced $5.98 in revenue and less than $3 in profits. However, based on these two sales (sales engineered by Plaintiff's law firm), Plaintiff moved for and was granted a <u>$1 million</u> default judgment. *See* Dkt. No. 46. This default judgment allowed Plaintiff to collect at least $4,533.53 in total from Store's Wish account, money the Store earned through hard work and through sale of products not related to this lawsuit.

---

[2] The item purchased from the Store was shipped to either 230 S Clark St., Suite 552 (Chicago, IL) and 300 S Wacker Dr., #2500 (Chicago, IL), both addresses Plaintiff's law firm has used in several other similar cases filed in this District. Furthermore, Plaintiff's attorneys have not denied that their agents purchased the products.

**Plaintiff's Lawsuit(s)**

In November of last years, Plaintiff filed a lawsuit in the Northern District of Illinois against 156 separate online stores.  *See* Dkt. Nos. 1, 10.  The Store should <u>not</u> have been a part of this "bulk" lawsuit because it was entirely independent of, had no commercial involvement with, and was otherwise not connected to the other 155 stores listed in the lawsuit.  Zhang Decl. ¶ 13.  Nevertheless, Plaintiff improperly joined the Store in this lawsuit based on generalized, baseless, and in many cases entirely false allegations.  The suit was filed under seal and the list of stores remained under seal for some time.

Although Plaintiff could have more effectively served the summons at the Store's physical addresses, on December 20, 2018, Plaintiff persuaded the Court to permit service of all 156 defendants (including the Store) by "email" and "electronic publication."  Dkt. Nos. 16, 22.  On or around February 5, Plaintiff sent emails containing the summons to the "Wish" email addresses of the 156 defendants.  Dkt. No. 37.

After its ineffective email and electronic publication service, Plaintiff moved for both an entry of default and default judgment on March 6, 2019.  Dkt. No. 42.  Six days later, on March 12, 2019, the Court simultaneously granted Plaintiff's Motion for Entry of Default and Default Judgment.  *See* Dkt. No. 405  Soo after the Court granted the default judgments, several of the defendant stores realized they were involved in some kind legal dispute, hired lawyers, and contacted Plaintiff's counsel to negotiate settlement agreements that allowed the defendants to unfreeze their accounts and, in some instances, based on information and belief, reclaim some of the surrendered assets.[3]   Indeed, as the case docket reveals, lawyers of defendant stores have contacted Plaintiff's attorneys and resolved the default judgments against them (by negotiating

---

[3] It is common practice in these types of cases, which are litigated often in the Northern District of Illinois, for the stores to negotiate with Plaintiff  in lieu of spending money on litigation.

3

settlement agreements leading to Plaintiff filing "satisfaction of judgments") in April, May, June, July, and even August of this year. *See* Dkt. Nos. 48, 49, 50, 51, 52, 53, and 54.

The Store did not know that they were involved in a legal proceeding until May of this year. Zhang Decl. ¶¶ 15-20. Although some of the assets in the Store's Wish accounts were deducted and restrained prior to May of 2019, the Store genuinely believed that this action was taken by the *Wish platform* as a fine for alleged infringement reported to Wish by Plaintiff. Zhang 16. The Store genuinely believed that this fine would the end of the issue. Zhang Decl. ¶ 16. It was not until late March that the Store learned from other, unrelated Wish stores that more money was being deducting from Wish accounts and that those deductions were a result of U.S. lawsuits brought by Plaintiff. Zhang Decl. ¶ 17. After learning about these other stores and the lawsuits, the Store began a sprawling internal investigation into whether they sold products similar to the other Wish stores. Zhang Decl. ¶ 18.

Throughout April, the Store investigated whether, how, and to what extent they sold any of the products sold by the third parties they knew were in the lawsuit. Zhang Decl. ¶ 18. As part of this investigation, the Store eventually checked their Wish email inbox for the first time in over six months and found the emails sent by Plaintiff about this lawsuit. Zhang Decl. ¶ 19. However, employees of the Store are not fluent in English and did not understand the emails. Accordingly, around the end of April and beginning of May, the Store sought and ultimately retained a Chinese-based attorney to assist them with the matter. The Store had heard that other stores hired attorneys and negotiated a settlement with Plaintiff, so they believed it could hire an attorney to do the same. The Chinese-based attorney, Ms. Bonnie Li, emailed Plaintiffs' counsel on the Store's behalf to find out if a settlement was possible. Ms. Li is not a U.S. attorney and she was not familiar with U.S. law or the procedural posture of the lawsuit; accordingly, she did know and thus was not able

to communicate to the Store that the case had gone to a default judgment. From the perspective of the Store, it only knew that there were lawsuits in the U.S. brought by Plaintiff, one of the lawsuits were somehow causing the deducting of money from and freezing of its Wish account, and that it hired a lawyer to negotiate a resolution to the dispute.

<u>Settlement Negotiations and Agreement</u>

On May 3, 2019, the Store's attorney, Chinese-based counsel Ms. Bonnie Li, reached out to Plaintiff's counsel and asked about a settlement. On May 6, 2019, Plaintiff's counsel sent Ms. Li a draft settlement agreement and demand, which Plaintiff conditioned upon the operator of the Stores signing and Ms. Li returning the agreement to Plaintiff's attorney no later than May 11, 2019. However, Ms. Li did not return the settlement agreement to Plaintiff's attorney by May 11, 2019. Plaintiff's settlement offer (with all of its conditions), therefore, expired. Nevertheless, the Store signed the settlement agreement on May 11, 2019 and, Ms. Li sent the signed agreement to Plaintiff's attorneys on May 18, 2019, thereby constituting a *new offer*. And this new offer had no conditions besides those contained in the written settlement agreement.[4] Most importantly, on May 29, 2019, Plaintiff's Director of Global Brand Enforcement (Zachary N. Toczynski) accepted the Store's offer by countersigning the settlement agreement, thereby immediately effectuating the terms of the settlement agreement. *See* Exhibit 1.

Days later, however, Plaintiff's attorney notified the Store's attorney that Plaintiff would not be honoring the settlement agreement based on an apparent misunderstanding between the parties that occurred outside of and before execution of the written agreement.

---

[4] The settlement agreement also contains an integration clause that clearly provides the agreement "constitutes the entire agreement between the Parties regarding the subject matter hereof, and neither Party is relying on anything other than the words hereof in entering into this Agreement." *See* Exhibit 1.

## The Store's Search for U.S. Counsel

As the result of the settlement agreement confusion, the Sales Manager of the Store, Mr. Richard Xie, immediately contacted Yevgeny Samokhleb, an immigration attorney in New York whom Mr. Xie had used for business immigration legal work. Attorney Samokhleb attempted to salvage the settlement by contacting Plaintiff's attorney; however, Plaintiff's attorney would not honor the settlement agreement but instead offered a new deal that included a $130,000 settlement payment for Plaintiff. The Store could not accept such an agreement, and thereafter used attorney Samokhleb's assistance to find U.S. counsel. Over the next three weeks, Attorney Samokhleb unsuccessfully attempted to retain three different Illinois law firms to represent the Store in the Northern Distrcit of Illinois. Attorney Samokhleb contacted the Store's current counsel during the last week in June and the Store formally retained its current counsel on July 3, 2019.

The Store's current counsel spent the next three weeks in July reviewing the Store's complicated case facts and case history, reviewing the court filings in each of these cases, communicating with its client, collecting additional evidence about the case, and interviewing officers for the Store. The Store's counsel then began conducting legal research into default judgment cases beginning in the last week of July. While researching default judgment case law, the Store's counsel emailed Plaintiff's attorneys to determine whether a settlement agreement in lieu of a litigation was possible. However, Plaintiff's counsel refused to return any of the money they collected through the default and so the Store's counsel focused on researching, drafting, and filing the four motions in the four separate cases. However, because the legal standard in these cases requires specific facts and evidence, because the case is complex and involves four different courts, and because the representative for the Store do not speak English well and live in a challenging time zone, and because the Store's counsel is a small firm with limited resources that

is currently stretched thin by several other cases, the Store's counsel needed the last four weeks to perform reasonable due diligence, research, draft, and file this Motion with the Court. This Motion also includes, as an exhibit, the Store's Answer to Plaintiff's Complaint. *See* Exhibit 2.

## ARGUMENT

The Court should enforce the terms of the binding settlement agreement between the Store and Plaintiff by ruling that the default judgment was satisfied pursuant to the parties' settlement agreement when Plaintiff obtained the agreed-upon additional $4,000 from the Wish accounts. In the alternative, the Court should set aside the default judgments against the Store because the service of process against the Store as improper and because the Store (1) did not willfully fail to litigate the lawsuit but rather failed to file a pleading by the deadline based on excusable neglect (a genuine lack of notice or at least understanding of the lawsuit and pleading deadlines, a belief that the lawsuit was settled, and then sustained difficulty in obtaining U.S counsel), (2) the Store is seeking to correct the default judgment within a reasonable time considering the circumstances of the case, and (3) the Store has a meritorious defense to Plaintiff's Complaint based on specific fact, evidence, and testimony, in accordance with FRCP 60(b)(1). Finally, the default judgment should be set side pursuant to Rule 60(b)(3), because the default judgment award was based on the several material misrepresentations Plaintiff made to the Court to obtain the default judgment amount.

## I.  A SETTLEMENT AGREMEENT BETWEEN PLAINTIFF AND THE STORE RELEASED AND DISCHARGED THE STORE FROM THE LIABILITY AND DAMAGE AWARED CONNECTED TO THE DEFAULT JUDGMENT.

"State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (internal citations omitted). "A settlement agreement is enforceable if there was a meeting of the

7

minds or mutual assent to all material terms. *Id.* (internal citations omitted). "Material terms are sufficiently definite and certain when they enable a court to ascertain what the parties agreed to do." *Id.* (internal citations omitted). Furthermore, "Illinois applies the four corners rule of contract interpretation, which bars consideration of extrinsic evidence when the contract is facially unambiguous and fully integrated." *Essex Ins. Co. v. RHO Chem. Co., Inc.*, 145 F. Supp. 3d 780, 788 (N.D. Ill. 2015) (citing *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir.2007)). Finally, the district court has the inherent authority to enforcement settlement agreements between parties of a case, even after a default judgment has been issued. *See Hakim v. Payco-Gen. Am. Credits, Inc.*, 272 F.3d 932, 936 (7th Cir. 2001) (affirming district court's inherent authority to enforce a settlement agreement despite a default judgment being entered).

On May 29, 2019, Zachary N. Toczynski, Plaintiff's Director of Global Brand Enforcement, executed the Confidential Settlement Agreement (the Settlement) between Plaintiff and the Store, thereby effectuating the agreement. *See* Exhibit 1. The Settlement provides that the Store (along with the other six stores in the joint partnership) agrees to cease using Plaintiff's trademarks and pay Plaintiff $7,423.79 (with $3,423.79 already paid and with the stores authorizing the remaining $4,000 to be transferred from their Wish accounts to Plaintiff) in exchange for Plaintiff fully releasing and discharging him and his stories from "any and all claims, demands, actions, and causes of action for attorney's fees, costs and damages, arising at law or in equity, with respect to the matters in the Lawsuit."

However, Plaintiff did not honor and soon breached the binding settlement agreement. Instead of taking an additional $4,000 from the stores' Wish accounts, Plaintiff took that amount, plus approximately $130,000 more. In justifying its actions, Plaintiff's attorney argued that the

Stores did not send back a signed settlement agreement by the May 11, 2019 expiration date (when Plaintiff's offer expired), and that the Store's attorney misrepresented the money in the all of the stores' Wish accounts. However, both of these arguments are incorrect and unconvincing. First, even though Plaintiff's original offer expired on May 11, 2019, the partially executed settlement agreement the Store thereafter sent to Plaintiff's attorney constituted a *new offer*, which Plaintiff eventually accepted by countersigning the settlement agreement on May 29, 2019. *See* Exhibit 1. Additionally, the fully executed settlement agreement that took effect on May 29, 2019 contains an integration clause, which makes it clear that the written agreement is the "entire agreement between the Parties" with neither Party "relying on anything other than the words hereof in entering into this Agreement. *See* Exhibit 1, Para. 11(d).

Plaintiff's second argument—that the Store's attorney was "not truthful in disclosing the correct amounts restrained in its accounts"—is both incorrect and immaterial. First, the fully executed settlement agreement does not require the Store (or the other stores) to provide the account balance of all Wish accounts; instead, the Agreement simply requires that the owner or operator of the Store "warrants and represents that it has fully and truthfully disclosed to LS&Co. all of its U.S.-based financial accounts, including PayPal, Amazon, and WISH accounts." *See* Exhibit 1, Para. 2. The Store did this, as the Store's Wish account was disclosed (as listed on Page 1 of the Agreement) and the Store did not have any U.S.-based financial accounts. As for the pre-agreement communications (which should not be considered due to the settlement agreement's integration clause), the Store's attorney never made any representation regarding the amount of funds contained in each of the Wish accounts; instead, she only confirmed that *one* Wish accounts contained enough money to pay the additional $4,000 settlement amount. Moreover, if Plaintiff wanted representations regarding the funds in the accounts, its attorneys should have sent a follow-

up email demanding such information or should have included such a warranty and representation in the settlement agreement. However, Plaintiff did not.

Finally, the balances in the Wish accounts was immaterial to the settlement, as Plaintiff already knew that the Wish stores had no sales of any products using the at-issue marks (besides the items purchased by Plaintiff's agents) and the settlement amount of $7,423.79 far exceeds the $1,000 per item statutory minimum. The $7,423.79 settlement also significantly exceeds the $200 per item innocent infringement statutory standard, a standard that should apply to this case.

## II. THE DEFAULT JUDGMENT SHOULD BE VACATED BECAUSE PLAINTIFF'S SERVICE ON THE DEFENDANT WAS IMPROPER.

Plaintiff's moved for service by email and online publication on August 10, 2018 and the Court granted Plaintiff's Motion on December 20, 2018. *See* Dkt. No. 16. However, Plaintiff's Memorandum in Support of its Motion for Electronic Service of Process, Dkt. No. 17, included incorrect statements of law that other districts in the Northern Distrcit of Illinois have explicitly contradicted and rejected. Specifically, for defendants such as the Store who are located in China, "the Hague Service Convention" (pursuant to Fed.R.Civ.P. 4(f)(3)) "requires [the plaintiff] to conduct a reasonable investigation of possible addresses for defendants." *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 18 CV 2188, 2019 WL 2357011, at *2 (N.D. Ill. June 4, 2019) (citing *Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *5 (S.D.N.Y. Sept. 30, 2018)).

In this case, Plaintiff did not conduct a reasonable investigation of possible addresses for the Store. First, upon information and belief, Plaintiff's agents purchased the at-issue pairs of jeans from the Store; therefore, Plaintiff could have used the return address from the shipping labels to attempt service on the Store. *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 18 CV 2188, 2019 WL 2357011, at *2 (N.D. Ill. June

4, 2019) (recognizing that the address labels were "an important source of information" that the plaintiff could have used to attempt services on the defendants). Second, even if that option was unavailable or unsuccessful, Plaintiff could have subpoenaed the addresses of the Store from the Wish platform. *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 18 CV 2188, 2019 WL 2357011, at *1 (N.D. Ill. June 4, 2019) (finding that plaintiff could have obtained the defendants' addresses information from Alibaba). However, Plaintiff did not do this. Instead, Plaintiff immediately moved the Court to allow Plaintiff to serve the Store by email and electronic publication. *See* Dkt. No. 16.

Furthermore, even in cases where the court has interpreted the Hague Service Convention differently, the court still required the plaintiff to "demonstrate reasonable attempts of service before exercising the discretion to allow plaintiffs to serve under alternative means." *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). In this case, Plaintiff failed to demonstrate any such reasonable attempts. *Id.*

Accordingly, because the Store was not properly served in this case, the default judgment is void. *See In re Outboard Marine Corp.*, 369 B.R. 353, 361 (Bankr. N.D. Ill. 2007) (vacating default judgment due to improper service despite defendant's delay in moving for a default and undemonstrated meritorious defense).

### III. THE DEFAULT JUDGMENT SHOULD BE VACATED BECAUSE THE STORE CAN DEMONSTRATE GOOD CAUSE, THAT IT ACTED WITHIN A REASONABLE TIME, AND IT HAS A MERITORIOUS DEFENSE.

Motions to vacate or set aside default judgments are governed by Fed.R.Civ.P. 55 and 60. *Coyote Logistics, LLC v. AMC Cargo Inc.*, No. 16 C 6371, 2017 WL 1862642, at *1 (N.D. Ill. May 9, 2017) (citing *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 44–45 (7th Cir. 1994)). In relevant part, Fed.R.Civ.P. 60(b) provide that "the court may relieve a party .

. . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....(3) fraud [or] misrepresentation . . . by an opposing party . . . (6) any other reason that justifies relief." The decision to grant relief under Rule 60(b) is "left to the sound discretion of the trial court." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir.1984); *see also Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir.1994).

Although the Seventh Circuit no longer reflexively disfavors default judgments, it still heavily favors a trial on the merits. *See Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 924 (N.D. Ill. 2019) (*quoting Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1383 (7th Cir. 1995) ("It is the policy of [the Seventh Circuit] to favor trials on the merits over default judgments.")). "For that reason, a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing." *Sun v. Bd. of Trustees of Univ. of IL,* 473 F.3d 799, 811 (7th Cir. 2007). As a court within the Seventh Circuit recently stated, courts follow "a well established policy of favoring a trial on the merits over a default judgment . . . [d]eciding matters by default is a weapon of last resort, appropriate only when a party willfully disregards pending litigation." *Naqvi v. Illinois Health & Sci.*, No. 17-CV-3145, 2019 WL 3573662, at *2 (C.D. Ill. Aug. 6, 2019)). Furthermore, Rule 60(b) is "liberally applied" in the context of default judgements. *Fid. & Deposit Co. of Maryland v. Jack Isom Constr. Co.*, No. 4:17-CV-21, 2018 WL 1859120, at *3 (N.D. Ind. Apr. 17, 2018) (quoting *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981)).

Most importantly, "in determining whether a defendant has established good cause for its default," the Seventh Circuit primarily considers whether the defendant "willfully ignore[d] the pending litigation." *Coyote Logistics, LLC v. AMC Cargo Inc.*, No. 16 C 6371, 2017 WL 1862642, at *2 (N.D. Ill. May 9, 2017). Therefore, while a default judgment is appropriate when "the

defaulting party has exhibited a willful refusal to litigate the case properly,'" *Davis v. Hutchins,* 321 F.3d 641, 646 (7th Cir.2003), or when it has shown a "callous disregard" for the procedures of the court, *Passarella v. Hilton Int'l Co.,* 810 F.2d 674, 676 (7th Cir.1987), when the defaulting party failed to litigate due to inadvertence, an honest misunderstanding or mistake, or excusable neglect (and the default is corrected in a reasonable time with a meritorious defense), justice does not favor maintaining the default judgment. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (citing *Passarella v. Hilton Int'l Co.,* 810 F.2d 674, 677 (7th Cir.1987)).

Accordingly, where a defendant establishes that (1) the default was not "willful" but resulted from "excusable neglect" (or some other "good cause" can be established), (2) it took action to correct the default judgment within "reasonable period of time" based on the circumstances of the case, and (3) it has a meritorious defense to the plaintiff's complaint (or at least a "serious question regarding the propriety of a default judgment"), the court will set aside the default judgment in the interest of justice and fairness. *Standard Ins. Co. v. Cole*, No. 1:04-CV-1207-JDT-TAB, 2005 WL 4882772, at *2 (S.D. Ind. Aug. 19, 2005) (*A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.,* 461 F .2d 40, 43 (7th Cir.1984) (**"[D]efault judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful."**) (emphasis in original); *see also Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 860–61 (7th Cir. 2016); *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (*quoting Sun v. Bd. of Trs. of Univ. of Ill.,* 473 F.3d 799, 810 (7th Cir.2007); *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988).

In this case, the Store has a good cause for not responding to Plaintiff's Complaint prior to the default judgment (the Store did not know of the pleading deadline or default motion or hearing),

it acted within a reasonable time (the Store sought an attorney immediately after discovering it was involved in the lawsuit, negotiated a settlement to the case, and then diligently sought U.S. counsel when Plaintiff did not honor the settlement agreement), and the Store has multiple meritorious defenses.

### A. The Store Did Not Willfully Fail To Litigate The Case But Failed To Do So Out Of Mistake And Inadvertence.

The Store "did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (citing *Passarella v. Hilton Int'l Co.,* 810 F.2d 674, 677 (7th Cir.1987)). More specifically, although the Court issued the default judgments on March 12, 2019, the Store did not have notice or knowledge of the pleading deadline, the default motion, or default judgment) until May of 2019. The Store's genuine lack of knowledge of the lawsuit, set forth in detailed facts, constitutes good cause. *See Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co.*, No. 10-CV-611-JPG-PMF, 2011 WL 1549226, at *2 (S.D. Ill. Apr. 21, 2011) (finding that the defendant demonstrated good cause for his default because he "did not know" he was sued); *see also Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (finding good cause when the defendant did not know the pleading deadline); *United States v. Five Thousand Dollars in U.S. Currency*, 184 F.3d 958, 960 (8th Cir. 1999) (holding that defendant's motion to set aside default judgment was timely, even though the motion was not filed until five years after the default judgment because the defendant did not know of the default judgment until two months before he filed his motion)

Good cause is particularly strong in this case in light of the fact that (1) the case was originally filed under seal, (2) this case involves online stores and not the entities or individuals that own the stores, (3) service of the Complaint (as amended) occurred through ineffective

14

electronic publication and email to a Wish email account, (4) several of the other defendants in this lawsuit did not receive notice until of the lawsuit until well after the default judgment when Plaintiff began collecting the default judgment by garnishing the Wish account, as demonstrated in Dkt. Nos. 61-69, 78, 80, 82-83.   In short, "there is no evidence that [the Store] intentionally failed to respond to the Complaint." *Coyote Logistics, LLC v. AMC Cargo Inc.*, No. 16 C 6371, 2017 WL 1862642, at *2 (N.D. Ill. May 9, 2017).   Instead, "[l]ooking at this chronology as a whole, it is clear that [the Store's] failure to timely file the answer was inadvertent . . . not the type of willful refusal to follow court rules that justifies refusing to vacate entry of default." *Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co.*, No. 10-CV-611-JPG-PMF, 2011 WL 1549226, at *2 (S.D. Ill. Apr. 21, 2011) (citing *Davis v. Hutchins,* 321 F.3d 641, 646 (7th Cir.2003)).

### B.  The Store Is Seeking to Correct the Default Judgment Within a Reasonable Time Given the Unique Circumstances of the Case.

A Rule 60 motion must be made "within a reasonable time and "no more than a year after the entry of the judgment."  Fed. R. Civ. P. 60(c)(1).  "What constitutes a 'reasonable time' ultimately depends on the facts of each case including the reason for delay, the practical ability of the litigant to have learned about the grounds of the judgment earlier, and the degree of prejudice to the other parties." *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 610 (7th Cir.1986) (internal quotation marks and citation omitted).   Accordingly, whether a defaulting party took "quick action" varies "from case to case" and relies heavily upon the specific circumstances of the case. *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016); *see also Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675 (7th Cir. 1987) (granting motion to set aside default judgment after *two months*); *Cent. Laborers' Pension, Welfare & Annuity Funds v.W.C. Beiser Concrete Co.*, No. 10-CV-611-JPG-PMF, 2011 WL 1549226, at *2 (S.D. Ill. Apr. 21, 2011) (granting

motion to set aside default judgment after *four months*); *Bieganek v. Taylor*, 801 F.2d 879, 880 (7th Cir. 1986) (reversing district court's denial of motion to vacate default judgment file four months from the written default judgment and *five months* from the oral default judgment); *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995) (reversing district court's denial of motion to vacate default judgment filed *seven months* after default judgment); *Window World, Inc. v. Hampton*, No. 12 C 4329, 2014 WL 1308349, at *5 (N.D. Ill. Apr. 1, 2014) (holding that defendants' filing of a motion to set aside a default judgment approximately *eight months* after entry of default judgment was "within a 'reasonable time' for the purpose of Rule 60(c)(1)"); *Moore v. Positive Safety Mfg. Co.*, 107 F.R.D. 49, 50 (E.D. Pa. 1985) (granting motion to vacate default judgment after *eight years*).

Most importantly, "[t]he action that a party takes after notification of the litigation should be what courts use in determining whether a defendant acted quickly." *Coyote Logistics, LLC v. AMC Cargo Inc.*, No. 16 C 6371, 2017 WL 1862642, at *3 (N.D. Ill. May 9, 2017) (citing *Trade Well Int'l*, 825 F.3d at 861). "Therefore, [the court's] inquiry begins when [the defendant] received notification of the default judgment from [the plaintiff]." *Id.*

In this case, the Store has a good cause for not responding to Plaintiff's Amended Complaint prior to the default judgment (it did not know about the case), the Store acted within a reasonable time (it sought an attorney immediately after discovering it was involved in lawsuit, it negotiated a settlement to the case, it then diligently sought U.S. counsel when Plaintiff did not honor the settlement agreement), and it has multiple meritorious defenses.

Firs, the Store did not know it was involved in a lawsuit until May of 2019. Upon finding out it was involved in a lawsuit, the Store quickly hired an attorney, who contacted Plaintiff's counsel and negotiated a settlement to the dispute. *See Bluegrass Marine Inc. v. Galena Rd.*

*Gravel, Inc.*, 211 F.R.D. 356, 358 (S.D. Ill. 2002) *(citing Whitman v. U.S. Lines, Inc.,* 88 F.R.D. 528 (E.D.Tx.1980) (vacating entry of default where default was a result of the defendant's good faith belief that the matter could be resolved outside of court)).

On May 29, 2019, a settlement agreement between the parties was fully executed and took effect. However, about a week later, Plaintiff's attorneys notified the Store's attorney that Plaintiff would not be honoring the settlement agreement. Consequently, the Store immediately began looking for representation by U.S. attorneys. Due to the complexity of the case, the Store's foreign status, and the default status of the case, it took approximately four weeks for the Store to find and retain its current counsel. *See Coyote Logistics, LLC v. AMC Cargo Inc.*, No. 16 C 6371, 2017 WL 1862642, at *3 (N.D. Ill. May 9, 2017) (holding that the defendant timely addressed the default judgment even though defendant took six weeks to obtain representation because of language difficulties and attorneys declining to take the case). Clearly, the Store did not "do nothing for two months" after Plaintiff informed it that it would not be honoring the settlement agreement, *Standard Ins. Co. v. Cole*, No. 1:04-CV-1207-JDT-TAB, 2005 WL 4882772, at *2 (S.D. Ind. Aug. 19, 2005, but immediately began trying to secure U.S counsel. *See also Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 880 (7th Cir. 1988) (finding that the defendant timely addressed the default judgment "although it was slow to secure replacement counsel).

The Store's current counsel was retained on July 3, 2019 and this counsel diligently worked over the next seven weeks to file this Motion. *See Tate v. Riverboat Servs., Inc.*, 305 F. Supp. 2d 916, 923–24 (N.D. Ind. 2004) (holding that defendant's 1.5 months delay based on "scheduling conflict" in filing a motion to vacate the default after learning of the default was within a reasonable period of time based on "the Seventh Circuit's preference for litigating claims on the

merits rather than letting harsh sanctions, like a default judgment, stand"); *see also United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909, 913 (7th Cir. 1983) (default judgment considered timely addressed after attorneys filed a motion to set aside the default judgment more than a month after counsel was appointed);

Finally, in this massive counterfeit lawsuit, where thousands of stores that have no connection to each other are improperly joined in a single lawsuit for the purposes of lowering litigation costs for plaintiffs while pushing judicial efficiency to uncharted territory, the competing interests of a Rule 60(b) motion favor "the interests of permitting a defaulting party to contest the merits of a dispute." *Anilina*, 856 F.2d at 878; *see also Armstrong v. The Cadle Co.*, 239 F.R.D. 688 (S.D. Fla. 2007) (holding that defendant's four-month delay in filing a motion to vacate while waiting for a court transcript was "not prejudicial to plaintiff, because plaintiff's counsel had spent minimal time and expense to collect the judgment against defendant"). This is especially the case when, as here, "[a]fter receiving the default judgment the plaintiff made no attempt whatsoever to notify the defendant of the default judgment against it but proceeded immediately with a garnishment action [the defendant's accounts], *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 677 (7th Cir. 1987), where Plaintiff has suffered no prejudice due to the delay except for receiving money from the default judgment, *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 798 (7th Cir. 1980), and where any concern with the "finality" is undermined by Plaintiff's active negotiation of settlement agreements with other defendants, including just a few weeks ago.

**C. The Store Has A Meritorious Defense.**

The Store, at the very least, has four separate and distinct meritorious defenses to Plaintiff's Complaint. First, the mark at issue is likely not valid because even though it is registered, ordinary consumers likely view the stich pattern and tab as an ornamental part of a pair of jeans rather than

18

a source identifier. Second, even if Plaintiff's marks are valid, there is no likelihood of confusion arising from the Store's limited listing of the at-issue jeans because no consumers purchased the product (besides Plaintiff's agents), and there is no evidence that consumers even saw the Store's listings. Third, Plaintiff suffered no damages as the result of the Store's limited-time listing, since no third party purchased the jean shorts (only agents of Plaintiff's law firm that purchased the items at the request of Plaintiff), there is no evidence that any consumer was confused by or even *saw* the Store's jean shorts listings, and Plaintiff cannot demonstrate that the existence of the Store's *specific listings* negatively affected any of their licensing deals or licensing revenue.

Fourth, even if Plaintiff were able to prove damages, those damages would not amount to the $1 million default judgment that the Court awarded the Plaintiff. As set forth in factual detail above, the Store innocently purchased and listed for sale a pair of jeans that had a small and indiscreet stitch pattern and tag on one of the back pockets that Plaintiff alleges is similar to its stich pattern and tab. The Store did not know, and reasonably did not know, that the jeans contained any trademarks. Moreover, the Store only sold two pairs of the jean shorts, with that sale going to agents of Plaintiff's law firm, who purchased the items for the instant lawsuit. The Store's total revenue was less than $9, its profit was less than $3, and the statutory damages available for Plaintiff for such innocent infringement is $200. Therefore, Plaintiff damages (if Plaintiff were to prevail on the merits and could prove damages) would only amount to $200 against the Store not $1 million. Even for regular, non-innocent infringement, the minimum statutory damage award is $1,000 per item per infringer, and there are no facts in this case that would justify an award any higher than the minimum if the case where the Court did not find innocent infringement. Finally, and as explained in the next section below, the Court's default judgment against the Store was based on material misrepresentations made by Plaintiff.

Accordingly, the Store has multiple meritorious defenses. These defenses, at the very least, "raise a serious question regarding the propriety of a default judgment." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (quoting *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir.1994)).

The Court should, therefore, set aside the default judgments against the Store. As Seventh Circuit has recognized, "in a case where the defendant has a reasonable explanation for its conduct that excludes any possibility of willfulness, and the defendant has an obviously meritorious defense to the plaintiff's claim, the interests of justice—of allowing a trial on the merits to proceed to a judgment that is fair and based on a full presentation of the evidence—demand that the default judgment be vacated and the case allowed to proceed to trial." *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 678 (7th Cir. 1987),

## IV. THE COURT SHOULD VACATE THE DEFAULT JUDGMENT PURSUANT TO RULE 60(B)(3) BECAUSE PLAINTIFF PROVIDED MATERIAL MISREPRENTATIONS TO THE COURT THAT THE COURT RELIED UPON IN GRANTING'S PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.

On March 12, 2019, the Court granted Plaintiff's Motion for Entry of Default and Default Judgment. *See* Dkt. Nos. 45-46. The Court's default judgment order found that all of the defaulting defendants were "liable for willful trademark infringement and counterfeiting" and awarded statutory damages of $1 million based on finding defendants "liable for willful federal trademark infringement and counterfeiting . . . ." *See* Dkt. No. 46, at 6. However, the Court's order was based on material misrepresentations in Plaintiff's Memorandum in Support of its Motion for Entry of Default and Default Judgment. *See* Dkt. No. 43. Specifically, before Plaintiff filed its Motion for Entry of Default and Default Judgment, Plaintiff knew or should have known the following facts based on their expedited discovery or reasonable due diligence: (1) the Store was independent of and had no business relationship with the 155 other listed defendants, (2) the Store only listed one item that allegedly used any of Plaintiff's marks (a back-pocket stich pattern

and tag), (3) the Store listed for sale thousands of products *entirely unrelated* to the lawsuit, (4) the Store did not advertise any of the at-issue marks, (5) the Sore only sold *one pair* of the jean shorts and that sale was to agents of Plaintiff's law firm, and (6) the total revenue from the Store's sales of the at-issue products was less than $9.

By the time Plaintiff filed its Motion for Entry of Default and Default Judgment, Plaintiff also knew or should have known that the following claims and allegations against the Store (set forth in Plaintiff's Amended Complaint and Preliminary Injunction Memorandum) were baseless: (1) that the Store continue[] to sell unauthorized and unlicensed counterfeit products, including jeans, jean jackets, and other apparel items, using counterfeits of the federally registered LEVI'S Trademarks," that the Store advertised the at-issue products, (3) that the Store "facilitated sales by designing the Defendant Internet Stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesaler," and (4) that the Store "create[s] the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine LEVI'S® brand products." None of these allegations was true in regard to the Stores and Plaintiff knew or reasonably should have known these allegations were not true. Nevertheless, Plaintiff chose not to withdraw or correct any of these provably false allegations prior to its Motion for Entry of Default and Default Judgment against the Store; instead, Plaintiff explicitly relied on these untrue allegations to obtain the $1 million default judgment against the Store.

Furthermore, in addition to this good cause, the Store also addressed the default judgment within a reasonable time given the unique circumstances of this case and have multiple meritorious defenses to Plaintiff's Amended Complaint, as set forth in the previous section of this Motion.

Accordingly, the Court should set aside the default judgment based in accordance with Rule 60(b)(3).

## V.     IN THE ALTERNATIVE, THE COURT SHOULD VACATE THE DAMAGE AWARD AGAINT THE STORE.

Finally, even when the circumstances of a particular case do not permit the court to set aside a default judgment of liability, the court may nonetheless reverse the damage award when it is clearly excessive.  *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 603 (7th Cir. 2007) (vacating the damage award that was based on Plaintiff's affidavits and remanding to the district court for a more extensive inquiry into the damages); *J & J Sports Prods., Inc. v. Kotsopoulos*, No. 1:13-CV-346-SLC, 2015 WL 5730343, at *5 (N.D. Ind. Sept. 30, 2015).  In this case, the damage award of $1 million against the Store is clearly excessive, considering the Store only listed for sale a single at-issue product that had no sales other than the sale engineered by Plaintiff's law firm in anticipation of this lawsuit.  Accordingly, at the very least, the Court should vacate the unjust $1 million damage award against the Store.

WHEREFORE, for the reasons stated above, the Court should enforce the binding settlement agreement between the Plaintiff and the Store, rule the default judgment was satisfied, and order Plaintiff to return to the Store the improperly transferred funds.  In the alternative, the Court should set aside the default judgment against the Store for the reasons listed above.

Dated: September 11, 2019

Respectfully submitted,
/s/ Matthew R. Grothouse
Matthew R. Grothouse
Saper Law Offices, LLC
505 N LaSalle, Suite 350
Chicago, IL 60654
Bar No. 6314834
Telephone: 312-527-4100
matt@saperlaw.com

*Attorneys for Defendant.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 11, 2019, he caused the foregoing to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ Matthew R. Grothouse
Matthew R. Grothouse
Saper Law Offices, LLC
505 N LaSalle, Suite 350
Chicago, IL 60654
Bar No. 6314834
Telephone: 312-527-4100
matt@saperlaw.com

*Attorney for Defendant.*
